1998-NMCA-113

964 P.2d 137

**BLACKWOOD & NICHOLS COMPANY, a corporation, et al., Petitioners–Appellants,**

v.

**NEW MEXICO TAXATION AND REVENUE DEPARTMENT, a governmental agency of the State of New Mexico, Respondent–Appellee.**

No. 18616.

Court of Appeals of New Mexico.

May 12, 1998.

Certiorari Denied Aug. 13, 1998.

Michael H. Feldewert, Campbell, Carr, Berge & Sheridan, P.A., Santa Fe, for Petitioners–Appellants.

Tom Udall, Attorney General, Margaret B. Alcock, Special Assistant Attorney General, Taxation & Revenue Department, Santa Fe, for Respondent–Appellee.

*OPINION*

DONNELLY, Judge.

{1}　Blackwood & Nichols Company, Devon Energy Corporation, Koch Exploration Company, and Dugan Production Corporation (Petitioners) appeal from an order of the district court granting summary judgment in favor of the New Mexico Taxation and Revenue Department (the Department). The central issue presented on appeal is whether Petitioners are liable for the tax imposed by the Natural Gas Processors Tax Act, NMSA 1978, §§ 7–33–1 to –8 (1963, as amended through 1985, and prior to the 1998 amendment) (the Act). For the reasons discussed herein, we affirm.

*FACTS AND PROCEDURAL POSTURE*

{2}　In 1963 the New Mexico Legislature enacted the Oil and Gas Manufacturers Privilege Tax Act, effective April 1, 1963. *See* 1963 N.M.Laws, ch. 179, §§ 1 to 27. In 1970 the statute was amended to delete the tax on manufactured oil products, and was renamed the "Natural Gas Processors Tax Act." *See* 1970 N.M.Laws, ch. 13, §§ 1 to 12. After a minor amendment in 1985, *see* 1985 N.M.Laws, ch. 65, §§ 41 to 42, the Act again underwent substantial changes in the 1998 legislative session. *See* 1998 N.M.Laws, ch. 102, §§ 1 to 8. As this appeal only concerns the application of the Act prior to the 1998 amendments, all references to the Act are to the version which preceded the 1998 amendments unless stated otherwise.

{3}　Petitioners are producers of natural gas in the Four Corners and San Juan Basin area of New Mexico. Each of the Petitioners has been producing natural gas in New Mexico for more than two decades, and some have engaged in such activity since the early 1950s. In 1995 the Department levied a tax under the Act against each of the Petitioners. Petitioners paid the tax under protest and filed claims for refund with the Department, pursuant to NMSA 1978, § 7–1–26 (1994). Following an administrative hearing, Peti-

tioners' refund claims were denied. Thereafter, Petitioners sought review of the Department's ruling in the First Judicial District Court, pursuant to Section 7–1–26(A)(2). The petitions were consolidated, and after a hearing the district court denied Petitioners' challenges to the Act, granted the Department's motion for summary judgment, and determined that Petitioners were liable for payment of the tax.

*DISCUSSION*

{4} Petitioners argue that the district court erred in construing the Act, granting summary judgment, and holding that they were liable for payment of the processing tax for the period in question.

 {5} On appeal of an order granting summary judgment, the evidence is viewed in a light most favorable to the party opposing summary judgment, *see Sarracino v. Martinez,* 117 N.M. 193, 194, 870 P.2d 155, 156 (Ct.App.1994), and the evidence is reviewed to determine whether there are disputed material factual issues warranting trial on the merits. *Id.* Where, as here, the material facts are not in dispute, summary judgment is proper when a party is entitled to judgment as a matter of law. *See id.; Lexington Ins. Co. v. Rummel,* 1997–NMSC–043, ¶ 9, 123 N.M. 774, 945 P.2d 992. Construction of a statute is a question of law that we review de novo. *See State v. Arellano,* 1997–NMCA–074, ¶ 3, 123 N.M. 589, 943 P.2d 1042; *Cox v. Municipal Boundary Comm'n,* 120 N.M. 703, 705, 905 P.2d 741, 743 (Ct.App. 1995). Determining whether statutory language is ambiguous also constitutes a question of law subject to de novo review. *See Leo v. Cornucopia Restaurant,* 118 N.M. 354, 357, 881 P.2d 714, 717 (Ct.App.1994). The fundamental principle of statutory interpretation is that the court must ascertain and give effect to the intent of the Legislature. *See Cummings v. X–Ray Assocs.,* 1996–NMSC–035, ¶ 44, 121 N.M. 821, 918 P.2d 1321. However, " '[w]hen a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation.' " *Sims v. Sims,* 1996–NMSC–078, ¶ 17, 122 N.M. 618, 930 P.2d 153 (quoting *State v.*

*Jonathan M.,* 109 N.M. 789, 790, 791 P.2d 64, 65 (1990)).

{6} In furtherance of their challenge to the district court's application of the Act, Petitioners argue that Section 7–33–4 is ambiguous and that it should be strictly construed against the Department. Among other things, Petitioners contend that the term "interest owner," which is undefined in the statute, is ambiguous. We do not agree. Although the statute has been modified by several amendments, its meaning is readily discernible when examined in light of the statute's legislative history and related statutory provisions.

{7} Section 7–33–4 provides in applicable part:

A. There is levied and shall be collected by the oil and gas accounting division of the taxation and revenue department, a privilege tax on processors for the privilege of engaging in the business of processing based on the value of their products. The measure of the tax shall be forty-five one-hundredths of one percent of the value of the products.

. . . .

C. Every interest owner is liable for this tax to the extent of his interest in the value of such products or to the extent of his interest as may be measured by the value of such products.

Any Indian tribe, Indian pueblo or Indian is liable for this tax to the extent authorized or permitted by law.

{8} Petitioners argue that under the language of the Act, the natural gas processors tax is imposed on the processors of natural gas. They point out that, at the administrative hearing, Petitioners presented evidence that there are presently two basic types of agreements generally in use relating to the processing of natural gas in New Mexico:

Under one type of agreement, usually referred to as a "casinghead agreement", the plant operator purchases 100 percent of a producer's natural gas at an agreed price before the gas enters the plant. The plant operator takes responsibility for selling the processed natural gas products. The agreed price the plant operator pays the

producer is usually calculated as a percentage of the plant operator's proceeds from the sale of [the processed] products.

This was the type of agreement that was pervasive in the natural gas industry in 1970, when the Act was amended. At that time, pipeline companies purchased substantially all of Petitioners' natural gas at the wellhead or at the inlet of a processing plant. The pipeline companies owned the processing plants and virtually all of the gas which passed through those plants. Under this type of agreement, the pipeline companies, as processors, traditionally reported and paid the natural gas processors tax.

{9} The record also shows that by the beginning of 1990 and up to the present time, Petitioners have contracted to sell natural gas to various parties downstream of the wellhead and processing plants. Petitioners do not own or operate any processing plants in New Mexico. Rather, they pay a fee to a processing company to transport their gas away from the wellhead and process it at various processing plants in New Mexico.

Under the second type of agreement, usually referred to as a "processing agreement", the plant operator does not take title to the natural gas delivered to the plant, but charges the owner of the natural gas a fee for the plant's processing services. The fee may be paid in cash or in-kind in the form of a portion of the processed products....

The dispute in this case is over who must pay the natural gas processors tax under this type of agreement.

■ {10} In support of their contention that Section 7–33–4 does not subject them to payment of the tax, Petitioners point to the fact that the statute calls for a tax "on processors for the privilege of engaging in the business of processing"; that a related provision, Section 7–33–8, requires processors to "make a return to the [Department] showing the value, volume and kind of products sold from each plant for the calendar month"; and that "[a]ll taxes due, or to be remitted, by the processor shall accompany this return." Petitioners reason that because they are not in the business of *processing* natural gas, they should not be subject to

the processors tax. They further argue that there has been a major change in industry practice from casinghead agreements to processing agreements and that legislation is necessary to subject them to liability for payment of the tax. We are not persuaded by these arguments.

■ {11} The fact that the Legislature has made provisions for reporting and remittance to be made by natural gas processors does not change the incidence of the tax, as spelled out in the language of the statute imposing the tax. *See United Nuclear Corp. v. Revenue Div., Taxation & Revenue Dep't*, 98 N.M. 296, 301, 648 P.2d 335, 340 (Ct.App. 1982) (where tax is imposed on buyer, and seller merely acts as the collector of the tax, legal incidence of tax does not shift to seller); *see also Fleming Oil Co. v. Anco Gas Corp.*, 217 S.W.2d 29, 37 (Tex.Civ.App.1948) (discussing Texas statute that charged production taxes against the producers (sellers) and made it the duty of the processor (buyer) to see that same were paid, and concluding "it was entirely lawful for the buyer and sellers to make any contract they pleased relative to the payment of the production taxes."). Nor are we persuaded that the change in industry practice from casinghead agreements to processing agreements relieves Petitioners of their tax liability. Legislative action, not unilateral taxpayer activity, is required to shift the incidence of taxation. *See GTE Southwest, Inc. v. Taxation & Revenue Dep't*, 113 N.M. 610, 618, 830 P.2d 162, 170 (Ct.App.1992) (pass-through of municipal franchise fee to customers does not change incidence of gross receipts tax); *First Nat'l Bank v. Commissioner of Revenue*, 80 N.M. 699, 705, 460 P.2d 64, 70 (Ct.App.1969) (contract between parties regarding payment of tax does not shift incidence of the tax).

{12} Petitioners do not dispute that they are the interest owners of the natural gas processed in this case. They argue that the Legislature, in adopting the statute, intended the incidence of the tax to apply only to the owners of interests in natural gas processing plants. We disagree. *See generally* Howard R. Williams & Charles J. Meyers, *Manual of Oil and Gas Terms* (7th ed.1987) (identifying types of interests that can be owned in oil

and gas, e.g., 562–63, "Mineral interest"; 699–700, "Per cent interest"; 862–63, "Royalty interest"; 1086–87, "Working interest"). *See State v. Glen Slaughter & Assocs.*, 119 N.M. 219, 224–25, 889 P.2d 254, 259–60 (Ct. App.1994) (where possible, court should avoid adopting a strained interpretation of statutory language). Contrary to the interpretation urged by Petitioners, we note that language declaring that interest owners are liable for payment of the tax to the extent of their interest in the value of the product is consistent with similar language contained in other tax statutes. *See* NMSA 1978, §§ 7–29–2(J) & –4(C) (1995) (oil and gas interest owners liable for oil and gas severance tax); NMSA 1978, §§ 7–30–2(I) and –4(A) (1989, as amended through 1996) (oil and gas interest owners liable for oil and gas conservation tax); NMSA 1978, §§ 7–31–2(I) and –4(B) (1993) (oil and gas interest owners liable for oil and gas emergency school tax); and NMSA 1978, §§ 7–32–2(I) and –4 (1981, as amended through 1986) (oil and gas interest owners liable for ad valorem production tax on oil and gas products). We think these statutes indicate that the Legislature intended to adopt a consistent statutory scheme imposing the ultimate liability for the oil and gas taxes in question on oil and gas interest owners. *See Benavidez v. Sierra Blanca Motors*, 1996–NMSC–045, 122 N.M. 209, 213, 922 P.2d 1205, 1209 ("When interpreting a statute, its provisions must be read together with other statutes relating to the same subject to ascertain legislative intent.").

{13} Section 7–33–4(C) of the Act specifically states that interest owners are liable for the oil and gas processing tax to the extent of their interest in the value of such products. Reading both the provisions of Section 7–33–4(A) and (C) together, we conclude that the Legislature intended to impose a privilege tax upon oil and gas processors and require that interest owners remain ultimately liable for payment of the tax to the extent of his or her interest in such products.

{14} The 1998 the Legislature amended the Act, effective January 1, 1999, and substantially changed the language of Section 7–33–4(A). *See* 1998 N.M.Laws, ch. 102, §§ 1 to 8. The amendment provides in applicable part: "There is levied and shall be collected by the department a privilege tax on processors for the privilege of operating a natural gas processing plant in New Mexico." Section 7–33–4(A). In addition, the Legislature amended Section 7–33–2 to adopt a definition of the term "processor." As amended, " 'processor' means a person who operates a natural gas processing plant[.]" Section 7–33–2(I).

■ {15} The 1998 amendment deletes the provision in Section 7–33–4(C) challenged by Petitioners herein, which declares that "[e]very interest owner is liable for this tax to the extent of his interest in the value of such products or to the extent of his interest as may be measured by the value of such products." The 1998 legislative amendment of Section 7–33–4 clearly evinces a legislative intent to delete the requirement subjecting all "interest owners" to liability for such tax. The title of House Bill 185 describes the legislation as: "AN ACT RELATING TO TAXATION; AMENDING THE NATURAL GAS PROCESSORS TAX ACT TO CHANGE THE BASIS ON WHICH THE TAX IS IMPOSED; AMENDING AND REPEALING SECTIONS OF THE NMSA 1978." The fact that the Legislature substantially rewrote the provisions of Section 7–33–4 indicates that the change was intended to modify the basis upon which the tax was previously levied. The change does not clarify existing law, instead it materially changes the tax basis. As observed by our Supreme Court in *Benavidez*, 122 N.M. at 213, 922 P.2d at 1209, a reviewing court presumes "that the Legislature intends to change existing law when it enacts a new statute." Thus, we conclude the district court correctly determined that the legislative intent in adopting Section 7–33–4 prior to the 1998 amendment was to subject interest owners to tax liability thereon "to the extent of [their] interest" therein.

■ {16} Similarly, we reject Petitioners' argument that their inability to benefit from the separate exemption from the gross receipts tax for payor of the processors tax, indicates that the tax is on the natural gas processors and not the interest owners because exemptions are strictly construed in

favor of the taxing authority. *See Kewanee Indus., Inc. v. Reese*, 114 N.M. 784, 791, 845 P.2d 1238, 1245 (1993). For the same reason, we reject Petitioners' argument that the district court erred in its decision requiring them to pay the "unforeseen" natural gas processors tax in addition to the taxes already imposed on oil and gas interest owners. By entering into agreements whereby they became interest owners, Petitioners came within the terms of the statute and thus were subject to liability under the Act.

{17} While the language of the statute described industry practice at the time the Act was passed, the Legislature did not rely on that language alone to effectuate its intent. Rather, the statutory language imposing tax liability was broad enough to encompass changes in industry practice. The processors tax for the periods in question specified that liability rested upon the interest owners.

*CONCLUSION*

{18} We affirm the judgment of the district court.

{19} **IT IS SO ORDERED.**

FLORES and ARMIJO, JJ., concur.