1999-NMCA-113

988 P.2d 883

**Rose ARCHULETA, as Personal Representative of the Estate of Marvin Archuleta, Plaintiff–Appellant,**

v.

**Wesley LACUESTA, Ronald Hensinger, John Denko, The New Mexico State Police and The New Mexico Department of Public Safety, Defendants–Appellees,**

and

**New Mexico Association of Counties, New Mexico Municipal League, The City of Albuquerque, The Regents of the University of New Mexico and The New Mexico Medical Society, Intervenors.**

No. 19,299.

Court of Appeals of New Mexico.

July 2, 1999.

Certiorari Denied, No. 25,869, Aug. 12, 1999.

See also 131 F.3d 1359.

Robert R. Rothstein, John L. Sullivan, Rothstein, Donatelli, Hughes, Dahlstrom, Cron & Schoenburg, LLP, Santa Fe, Robert M. Ortiz, Glass and Quintana, Albuquerque, William H. Carpenter, Carpenter & Chavez, Ltd., Albuquerque, for Appellant.

John E. DuBois, Robert Lohbeck, Risk Management Division, The State of New Mexico, Santa Fe, for Appellees.

## OPINION

WECHSLER, Judge.

{1}    The Estate of Marvin Archuleta (Estate) appeals the district court's grant of partial summary judgment and the denial of its motion for reconsideration under Rule 1–060(B)(1) NMRA 1999. Partial summary judgment was granted to New Mexico State Police Officers Wesley LaCuesta, Ronald Densinger, and John Denko for the Estate's 42 U.S.C. § 1983 (1994) claim that the officers violated Archuleta's Fourth Amendment right to be free from unreasonable seizure in using excessive force resulting in Archuleta's death. We hold that there are genuine issues of material fact concerning what occurred the night of the shooting and reverse the order granting summary judgment for Officer LaCuesta. We also reverse and remand for reconsideration the order of summary judgment for Officers Hensinger and Denko because it appears that the district court did not assess these claims independently from the claim against Officer LaCuesta.

*Background*

{2}    On the night of March 3, 1994, Officers LaCuesta and Hensinger were pursuing Archuleta after responding to a domestic-disturbance call from Archuleta's wife. During the pursuit, Officer LaCuesta fired his gun and mortally wounded Archuleta. The Estate's complaint alleged two counts. The first count was against Officers LaCuesta, Hensinger, Denko (then Chief of the New Mexico State Police), the New Mexico State Police, and the New Mexico Department of Public Safety under the Tort Claims Act, NMSA 1978, §§ 41–4–1 to –27 (1976, as amended through 1996). The second count was against Officers LaCuesta, Hensinger, and Denko in their individual capacities, alleging violation of Archuleta's constitutional right against unreasonable seizure under 42 U.S.C. § 1983.

{3}    Officers LaCuesta, Hensinger, and Denko filed motions for summary judgment asserting the defense of qualified immunity against the 42 U.S.C. § 1983 claim. The Estate filed separate responses to the motions for summary judgment, asserting that there existed genuine issues of material fact precluding summary judgment. In opposing summary judgment, the Estate also filed affidavits, depositions, reports of several experts, and a transcript of the tape recording made by Officer LaCuesta the night of the shooting. Officers LaCuesta and Hensinger filed replies to the Estate's response to their motions for summary judgment.

{4}    On May 2, 1997, the district court granted the three officers' motions for summary judgment on the 42 U.S.C. § 1983 claims on the basis of qualified immunity but allowed the Estate's claim under the Tort Claims Act to proceed to trial. At the hearing on the motions for summary judgment, the district court explained its ruling in part

by stating that it believed there was evidence to support Officers LaCuesta and Hensinger's version of what happened. After the conclusion of the May 1997 trial on the Tort Claims Act claims, the Estate filed a motion under Rule 1–060(B)(1) for relief from the May 2, 1997 order. The district court denied this motion by interlocutory order because no final order regarding the jury verdict awarding damages to the Estate for the Tort Claims Act claim had been entered.[1] The Estate filed an application for an interlocutory appeal, which this Court granted.

*Summary Judgment, Qualified Immunity, and 42 U.S.C. § 1983 "Deadly Force" Claims*

{5} The Estate's Rule 1–060(B) motion was essentially a motion to reconsider the district court's earlier grant of partial summary judgment on the 42 U.S.C. § 1983 claim. Although a Rule 1–060(B) motion cannot be used to extend the time for appealing the order sought to be set aside by the motion, *see Deerman v. Board of County Comm'rs*, 116 N.M. 501, 505–06, 864 P.2d 317, 321–22 (Ct.App.1993), the partial summary judgment was not a final order and the time for appeal had not yet begun to run. Accordingly, we treat the appeal of the denial of the Rule 1–060(B) motion as encompassing an appeal of the original partial summary judgment.

{6} We review de novo the district court's grant of summary judgment. *See Hasse Contracting Co. v. KBK Fin., Inc.*, 1999–NMSC–023, ¶ 9, 127 N.M. 316, 980 P.2d 641 (1999); *Latta v. Keryte*, 118 F.3d 693, 697 (10th Cir.1997). In reviewing the record, we view the evidence presented in the light most favorable to the party opposing summary judgment. *See Blackwood & Nichols Co. v. New Mexico Taxation & Revenue Dep't*, 1998–NMCA–113, ¶ 5, 125 N.M. 576, 964 P.2d 137; *Latta*, 118 F.3d at 697.

{7} A person acting under color of state law who violates the rights of a plaintiff established by the United States Constitution or federal statutes may be held personally liable for his or her action under 42 U.S.C. § 1983. *See Moongate Water Co. v. State*, 120 N.M. 399, 403–04, 902 P.2d 554, 558–59 (Ct.App.1995). Such a person is entitled to qualified immunity from suit, however, if his or her action was objectively reasonable in light of clearly established law. *See Yount v. Millington*, 117 N.M. 95, 98, 869 P.2d 283, 286 (Ct.App.1993). The framework for reviewing appeals of summary judgment orders granting qualified immunity has been succinctly stated by our Supreme Court:

> First, a court must look at the undisputed facts and those facts adduced by the party opposing summary judgment to see if there is any evidentiary support for finding a possible violation of law. Second, if the law may have been violated, a court must ask if that law was clearly established at the time of the alleged violation.

*Romero v. Sanchez*, 119 N.M. 690, 692, 895 P.2d 212, 214 (1995); *see also Flores v. Danfelser*, 1999–NMCA–091, ¶ 24, 127 N.M. 571, 985 P.2d 173 (App.1999).

{8} The Estate has alleged that Officers LaCuesta, Hensinger, and Denko violated Archuleta's constitutional right to be free from unreasonable seizures under the Fourth Amendment by using excessive force to restrain him. The United States Supreme Court has clearly established that a police officer's use of deadly force is reasonable only if "the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Tennessee v. Garner*, 471 U.S. 1, 3, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); *see also Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Whether an officer's action was reasonable is heavily fact dependent. *See Graham*, 490 U.S. at 396, 109 S.Ct. 1865; *Wilson v. Meeks*, 52 F.3d 1547, 1553 (10th Cir.1995). The reasonableness of the use of deadly force in any particular situation is an objective test from the perspective of the officer on the scene, with the understanding that officers must often make split-second decisions in difficult situations about what force is neces-

---

1. Issues in this case involving the constitutionality of damages caps awarded under the Tort Claims Act claim are currently under review in the New Mexico Supreme Court, No. 25,112.

sary. *See Graham,* 490 U.S. at 396–97, 109 S.Ct. 1865.

█ {9} With the premise that the question of qualified immunity is not simply whether the action violated the constitutional standard, but whether a competent officer could have reasonably believed that the action was lawful in light of clearly established constitutional principles, *see Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), we turn to the question of whether summary judgment was properly granted based on the evidence before the district court.

*Disputed Facts Concerning the Reasonableness of Officer LaCuesta's Actions*

{10} The issue regarding Officer La-Cuesta, is whether there are any material disputed facts bearing on whether Officer LaCuesta's action in shooting Archuleta was objectively reasonable under the circumstances. The reasonableness of Officer La-Cuesta's shooting Archuleta depends on whether he had probable cause to believe Archuleta posed a significant threat of death or serious physical injury.

█ {11} The parties do not dispute that Archuleta was "seized" for purposes of Fourth Amendment analysis when he was shot. *See California v. Hodari D.,* 499 U.S. 621, 626–27, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (holding that a seizure occurs only when a fleeing suspect is physically touched by the police or when he or she submits to a show of police authority). The relevant evidence is evidence that immediately prior to the shooting, Officer Hensinger may have moved to within twelve feet of where Archuleta had stopped and that Archuleta may have made a threatening gesture toward Officer Hensinger. This evidence directly bears on whether Officer LaCuesta had probable cause to believe that Officer Hensinger was in danger and whether shooting Archuleta was reasonable under the circumstances. Even assuming that Archuleta had a knife and was taking flight from the scene of a domestic-disturbance call, if the officers were a sufficient distance from him, or, if he was not making any threatening gesture toward the officers when he was shot, a reasonable

officer in Officer LaCuesta's position would not have probable cause to believe that Archuleta posed a significant threat of death or serious injury. Officers LaCuesta, Hensinger, and Denko do not argue that Archuleta posed a threat to anyone other than the officers.

{12} There was evidence that Officer Hensinger stated on the night of the shooting that he was twelve yards and Officer La-Cuesta was 25–27 yards from Archuleta when Archuleta was shot. He later changed his statement to assert that he was twelve to fourteen feet from Archuleta. Officer La-Cuesta testified that he believed Officer Hensinger was ten feet from Archuleta when Officer LaCuesta shot Archuleta. There was also conflicting evidence about Archuleta's movements, if any, immediately prior to being shot. In particular, there is a dispute about whether Archuleta was facing Officer Hensinger and lunged toward him or whether Archuleta had his back to Officer Hensinger. The deposition of a pathologist from the New Mexico Office of the Medical Investigator could be read to cast doubt on the officers' testimony that Archuleta made a lunging motion toward Officer Hensinger. The Estate also filed the affidavit of an accident reconstructionist who cast doubt on the veracity of the officers' descriptions of Archuleta's movements.

█ {13} Although Officers LaCuesta, Hensinger, and Denko objected to much of this testimony below, their answer brief does not challenge the admissibility of this evidence, and instead relies exclusively on the evidence in support of the officers' version of events and does not resolve any conflicting evidence. Because there is conflicting evidence as to how close Officer Hensinger was to Archuleta at the moment Officer LaCuesta shot Archuleta and as to whether Archuleta was moving toward Officer Hensinger or had made any threatening gesture, we reverse the summary judgment granted to Officer LaCuesta. We need not consider any other factual disputes raised by the parties.

{14} If Archuleta did not make any threatening motion toward Officer Hensinger or if Officer Hensinger was twelve yards

away from Archuleta, a jury could reasonably conclude that Officer LaCuesta did not have probable cause to believe Officer Hensinger was in immediate danger and that no reasonable officer could have believed that shooting Archuleta under this factual scenario was lawful. If, however, the jury were to believe that Archuleta did make a threatening motion toward Officer Hensinger and that Officer Hensinger was only twelve feet away from Archuleta, it could reasonably determine that Officer LaCuesta's shooting Archuleta was reasonable under the Fourth Amendment. Because there is a factual dispute surrounding the circumstances immediately connected to the shooting which includes passing on the credibility of witnesses, the reasonableness of the force used is a factual question to be decided by a jury. *See Thomas v. Roach*, 165 F.3d 137, 144 (2d Cir.1999) (vacating summary judgment granting qualified immunity where several material facts were in dispute); *Prokey v. Watkins*, 942 F.2d 67, 73–74 (1st Cir.1991) (affirming denial of qualified immunity on motion for summary judgment where there were material facts in dispute concerning an arrest warrant); *Zuchel v. Spinharney*, 890 F.2d 273, 275 (10th Cir.1989) ("Neither we, nor the district court, are entitled to weigh evidence or pass on the credibility of witnesses in deciding summary judgment issues."); *cf. Slattery v. Rizzo*, 939 F.2d 213, 216–17 (4th Cir.1991) (reversing denial of motion for summary judgment where the facts were undisputed and, based on those facts, the officer had probable cause to believe that the plaintiff posed a deadly threat); *Hutton v. Strickland*, 919 F.2d 1531, 1539–42 (11th Cir.1990) (reversing the denial of a motion for summary judgment based on qualified immunity where there were no disputed facts about the parties' actions).

{15} We reverse the grant of summary judgment in favor of Officer LaCuesta because there are genuine issues of material fact. *See Zuchel*, 890 F.2d at 275; *Brandenburg v. Cureton*, 882 F.2d 211, 215–16 (6th Cir.1989) ("This court ultimately decides the law to be applied. In this case, however, the jury becomes the final arbiter of appellant['s] ... claim of immunity, since the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury."); *see also Hemphill v. Schott*, 141 F.3d 412, 417–18 (2d Cir.1998) (holding that summary judgment was not appropriate where there was contradictory evidence of the plaintiff's actions).

*Summary Judgment in Favor of Officers Hensinger and Denko*

{16} In briefs filed in the district court, Officers Hensinger and Denko argued grounds for granting them qualified immunity that were independent of Officer LaCuesta's potential liability. Although the district court briefly commented on Officer Hensinger's liability independent of that of Officer LaCuesta, it appears that the district court based its ruling on the determination that the Estate failed to unequivocally rebut the evidence supporting Officers LaCuesta, Hensinger, and Denko's version of the event, and that as a matter of law, there was no violation of Archuleta's constitutional rights. On appeal, the parties have not argued any of the independent grounds for qualified immunity regarding Officers Hensinger and Denko. The Estate's brief notes in a footnote that it submitted evidence to the district court demonstrating the existence of genuine issues of material fact relating to these grounds and that it would be inappropriate for this Court to affirm on the grounds argued by Officers Hensinger and Denko below. Officers LaCuesta, Hensinger, and Denko's answer brief relies on the determination that the deadly force used against Archuleta was objectively reasonable as a matter of law.

{17} Because these grounds were not briefed on appeal and because it appears that the district court did not give full consideration to any independent grounds for granting Officers Hensinger and Denko qualified immunity since it decided the matter on summary judgment, we reverse and remand for reconsideration the summary judgments granted to Officers Hensinger and Denko.

*Conclusion*

{18} Having determined that there are genuine issues of material fact, we reverse

the summary judgment granted to Officer LaCuesta. We also reverse the order granting summary judgment to Officers Hensinger and Denko to allow the district court to consider the independent arguments raised by them in their motions below.

{19} **IT IS SO ORDERED.**

APODACA and HARTZ, JJ., concur.

HARTZ, Judge (concurring).

{20} I join fully Judge Wechsler's opinion for the Court. I write separately only to emphasize that the defendant officers attempted to justify the shooting of Mr. Archuleta solely on the ground of the threat he posed to the officers' safety. In particular, they did not argue that deadly force may have been permissible because of the threat he posed to his wife or other members of the public. The United States Supreme Court stated in *Tennessee v. Garner*, 471 U.S. 1, 11–12, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), that if "there is probable cause to believe that [the suspect] has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given." In a footnote the Court also indicated that an officer may use deadly force "to apprehend 'perpetrators who, in the course of their crime threatened the use of deadly force, or if the officer believes there is a substantial risk that the person whose arrest is sought will cause death or serious bodily harm if his apprehension is delayed,'" when the officer "'know[s],' as a virtual certainty, that the suspect committed an offense for which the use of deadly force is permissible.'" *Id.* at 9 n. 8, 105 S.Ct. 1694 (quoting President's Commission on Law Enforcement and Administration of Justice, *Task Force Report: The Police* 189 (1967)).