This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37141**

**CAMILLE VAROZ,**

      Plaintiff-Appellant,

v.

**ALBUQUERQUE PUBLIC
SCHOOL BOARD,**

      Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Valerie A. Huling, District Judge**

The Gilpin Law Firm, LLC
Donald G. Gilpin
Christopher P. Machin
Albuquerque, NM

for Appellant

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Jennifer G. Anderson
Megan T. Muirhead
Elizabeth A. Martinez
Albuquerque, NM

for Appellee

### MEMORANDUM OPINION

**VARGAS, Judge.**

**{1}** Plaintiff Camille Varoz appeals an order granting summary judgment in favor of Defendant Albuquerque Public School Board, dismissing Plaintiff's claims. Plaintiff argues the district court erred in granting Defendant summary judgment because

genuine issues of material fact exist based on evidence presented by Plaintiff at the summary judgment stage to support her hostile work environment and constructive discharge claims. We affirm and hold that, as a matter of law, Plaintiff failed to present sufficient evidence to support her claims.

**BACKGROUND**

**{2}**    Plaintiff brought claims for hostile work environment and constructive discharge against her employer, Defendant, as a result of seventeen incidents she alleges occurred during a five-month period when she worked as a Teacher Level III in the Special Education Department for an Albuquerque Public Schools middle school. Plaintiff claims she was mistreated by three of her supervisors, Principal Bateson, Vice Principal Patterson, and immediate supervisor Ms. Szczypiorski, as a result of Plaintiff's age and race/national origin. Defendant filed a motion for summary judgment seeking the dismissal of both claims, arguing that the events alleged by Plaintiff did not sufficiently establish a hostile work environment or constructive discharge. In Defendant's motion for summary judgment, Defendant provided non-discriminatory reasons why Plaintiff was given a directive, a letter of reprimand, and put on a performance improvement plan in the spring of 2015 and explained why Plaintiff's allegations do not rise to the level required to establish a hostile work environment or constructive discharge.

**{3}**    In response, Plaintiff asserted she was discriminated against due to her age and race/national origin because the administration treated her worse than the younger, "Anglo" teachers that Plaintiff contends make up "over 95 percent" of the teaching staff at her school. Using excerpts from her deposition testimony, Plaintiff presented evidence of the alleged discriminatory conduct. Plaintiff alleged that Ms. Szczypiorski complained about Plaintiff to Mr. Bateson, Ms. Szczypiorski made derogatory comments about her to other teachers, and also that Mr. Bateson solicited complaints about Plaintiff. Plaintiff also stated that her supervisors would prioritize younger, "Anglo" teachers over Plaintiff by (1) rescheduling Plaintiff's meetings to meet with other teachers; (2) failing to meet with Plaintiff during scheduled meeting times while keeping scheduled meetings with other teachers; (3) showing up unannounced to observe Plaintiff instead of keeping scheduled observation times; or (4) refusing to meet with Plaintiff.

**{4}**    Plaintiff also complained she did not receive proper training or assistance from her supervisors because Ms. Szczypiorski refused to give her one-on-one computer training and would not help Plaintiff with her individualized education plans (IEPS), but would assist younger, "Anglo" teachers with their IEPS. Plaintiff further alleged that all of her supervisors regularly failed to greet her but would greet younger, "Anglo" teachers. Plaintiff additionally alleged that her supervisors disregarded her opinions regarding the placement of special education students, unlike the opinions of younger, "Anglo" teachers. Plaintiff complained of being yelled at one time by Ms. Szczypiorski; alleged Ms. Szczypiorski would not let Plaintiff print documents at the printer in her office, unlike other teachers; and contended that Ms. Szczypiorski would not participate in mediation

with Plaintiff. When Plaintiff announced she was leaving her position, Ms. Patterson told her that the school "could not afford her," which Plaintiff interpreted as a comment about Plaintiff's age. Plaintiff also alleged Mr. Bateson unjustly disciplined her before addressing the complaints against her.

**{5}** The district court granted Defendant's motion for summary judgment. Plaintiff appeals.

## DISCUSSION

### I.   Plaintiff Properly Exhausted Administrative Remedies

**{6}** As an initial matter, Defendant argues Plaintiff cannot base her hostile work environment and constructive discharge claims on the alleged conduct of Ms. Szczypiorski because Plaintiff "failed to exhaust any such claim before the [New Mexico] Department of Workforce Solutions" by not referencing Ms. Szczypiorski in her charge of discrimination. First, Defendant has failed to provide any authority requiring Plaintiff to list every individual involved in her charge of discrimination. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). Second, New Mexico law establishes that Plaintiff has sufficiently exhausted her administrative remedies through the Human Rights Commission by identifying the only defendant in this case, Albuquerque Public School Board, as the employer she believed discriminated against her and providing sufficient detail about the alleged hostile work environment. *See* NMSA 1978, § 28-1-10(A) (2005) (listing the required components of a complaint alleging unlawful discriminatory practice filed with the Human Rights Commission, which does not include identification of each individual responsible for discrimination within an organization); *see also Lobato v. State Env't Dep't*, 2012-NMSC-002, ¶ 10, 267 P.3d 65 ("[New Mexico Human Rights Act] claims require administrative exhaustion before a plaintiff can bring suit."). Plaintiff did not name any of her supervisors as individual defendants in this case, and therefore, she was not required to name them in her administrative complaint to sufficiently exhaust her administrative remedies. *See* § 28-1-10; *cf. Lobato*, 2012-NMSC-002, ¶ 10 (holding that individuals must be named in an administrative complaint to exhaust administrative remedies before such individuals can be sued).

### II.   Hostile Work Environment

**{7}** Plaintiff argues that the district court erred in granting Defendant summary judgment because there were disputed material facts as to her hostile work environment claim. This Court reviews a district court's grant of summary judgment de novo by "view[ing] the evidence presented in the light most favorable to the party opposing summary judgment[,]" *Archuleta v. Lacuesta*, 1999-NMCA-113, ¶ 6, 128 N.M. 13, 988 P.2d 883, and "consider[ing] the whole record for evidence that places a material fact at issue[,]" *Cates v. Regents of N.M. Inst. of Mining & Tech.*, 1998-NMSC-002, ¶ 9, 124 N.M. 633, 954 P.2d 65. A summary judgment "movant must establish a prima facie case

showing there is no genuine issue of material fact in order to be entitled to summary judgment." *Ocana v. Am. Furniture Co.*, 2004-NMSC-018, ¶ 28, 135 N.M. 539, 91 P.3d 58 (internal quotation marks and citation omitted). "Once the moving party has made the prima facie case, the burden shifts to the non-movant to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *See Smith v. Durden*, 2012-NMSC-010, ¶ 5, 276 P.3d 943 (internal quotation marks and citation omitted).

{8}     In order to prove a hostile work environment claim, a plaintiff must show that the defendant violated the New Mexico Human Rights Act (NMHRA) by "discriminat[ing] in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of race, age, religion, color, national origin, ancestry, sex, sexual orientation, gender identity, physical or mental handicap or serious medical condition," unless the action is "based on a bona fide occupational qualification or other statutory prohibition[.]" NMSA 1978, § 28-1-7(A) (2019[1]). Even if such plaintiff is not alleging she suffered a specific adverse employment action under the NMHRA, she can still show she was subjected to a hostile work environment by demonstrating that "the offensive conduct ha[d] the purpose or effect of unreasonably interfering with [her] work performance or creating an intimidating, hostile, or offensive working environment." *Ulibarri v. State of N.M. Corr. Acad.*, 2006-NMSC-009, ¶ 12, 139 N.M. 193, 131 P.3d 43 (internal quotation marks and citation omitted). A plaintiff must show a jury "could reasonably consider the totality of [the] circumstances and conclude that the environment in the office was hostile" for a hostile work environment to exist. *Littell v. Allstate Ins. Co.*, 2008-NMCA-012, ¶ 38, 143 N.M. 506, 177 P.3d 1080.

{9}     Moreover, a plaintiff is required to show that the work environment was both objectively and subjectively hostile: "one that a reasonable person would find hostile or abusive and one that the employee did perceive as being hostile or abusive." *Ulibarri*, 2006-NMSC-009, ¶ 12 (internal quotation marks and citation omitted). In determining if the work environment was objectively hostile or abusive, we review "the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (internal quotation marks and citation omitted). Importantly, the alleged discriminatory conduct must be motivated by an employee's membership in a protected group. *See* § 28-1-7(A); *see also* UJI 13-2307 NMRA (listing required elements of a NMHRA violation).

{10}    Turning to the present case, we first consider the nature of the conduct alleged by Plaintiff as age and race/national origin based harassment. As set forth in detail above, Plaintiff alleged that she was treated worse than younger, "Anglo" teachers at her school because, generally, supervisors did not greet her but did acknowledge younger, "Anglo" teachers; supervisors would not meet with her and prioritized meeting with other teachers instead; supervisors disregarded Plaintiff's opinions about the

---

1We note that, although the statute was amended in 2019, the amendment is not pertinent to the present case because it included sexual orientation and gender identity among the protected classes, and removed the limitation of the number of employees an employer must have to include such bases, and did not otherwise amend the content of the statute.

placement of special education students; a supervisor did not assist Plaintiff with her IEPS, but assisted younger, "Anglo" teachers; Plaintiff was not allowed to print documents to printers where other teachers were allowed to print; and Plaintiff was unjustly disciplined. Plaintiff has not made any allegations that her supervisors used any race or age-based derogatory statements toward her or that the supervisors treated other teachers with any race or age-based harassment to show an overall discriminatory environment at the school. *See* § 28-1-7(A). Instead, Plaintiff's allegations identify several instances of facially neutral behavior, the motives for which Plaintiff attributes to her race and age, relying solely on the facts that Plaintiff happens to be older than at least some of the other teachers, and not "Anglo." Plaintiff, however, has failed to show a nexus between the conduct by her supervisors and her protected status, which is required to support a discrimination claim under the NMHRA. *See* § 28-1-7(A); UJI 13-2307 (requiring a jury to determine that an employer violates the act if it discriminates in matters of conditions of employment against a person *based on* his or her protected status); *see also Chavez v. State*, 397 F.3d 826, 833 (10th Cir. 2005) ("[A] hostile environment claim requires a showing not only of severe and pervasive harassment, but of severe and pervasive harassment *based on* [one or more of the protected classes listed in Section 28-1-7(A)]." (emphasis added)).

**{11}** Second, even if Plaintiff had established the necessary nexus between the conduct of her supervisors and her age or race or if Plaintiff had shown that the alleged conduct "unreasonably interfer[ed] with [her] work performance or creat[ed] an intimidating, hostile, or offensive working environment[,]" *see Ulibarri*, 2006-NMSC-009, ¶ 12 (internal quotation marks and citation omitted), Plaintiff must also establish that her work environment was both objectively and subjectively hostile. *See id.* In her response to Defendant's motion for summary judgment, Plaintiff attached deposition testimony stating she felt she was discriminated against because she was treated differently than younger, "Anglo" teachers by her supervisors. Her deposition testimony demonstrates that she subjectively felt harassed. *See id.* We thus turn to the objective inquiry using the factors we have identified.

**{12}** In determining whether the work environment was objectively hostile, we consider the nature and severity of the offensive conduct alleged by Plaintiff. *See id.* Plaintiff alleges that her supervisors' conduct was pervasive because of the sheer number of discriminatory events she was subjected to over a five-month period, including the numerous times she was treated worse than younger, "Anglo" teachers. However, we are unpersuaded that the events as alleged by Plaintiff were sufficiently severe to support a hostile work environment claim.

**{13}** Several of the incidents alleged by Plaintiff, including allegations that her supervisors failed to greet her and complained about her to others, can be attributable to disagreements in personality that are not unexpected in workplace environments. While inconvenient or uncomfortable, this is not enough to show a hostile work environment. *See id.* ¶ 13 ("[S]imple discomfort over a short period of time is not sufficient to alter the terms and conditions of employment."); *see also id.* ¶ 12 (indicating that civil rights statutes are not intended to be "general civility code[s]" and that

workplace socializing, or the lack thereof, should not be mistaken for discrimination). Plaintiff has not presented any authority indicating that ill will between a supervisor and an employee, absent evidence of discrimination, is enough to establish the discriminatory animus required for a hostile work environment claim, and we decline to so hold on the facts of this case. *See id.* ¶ 12; *see also Curry*, 2014-NMCA-031, ¶ 28 ("Where a party cites no authority to support an argument, we may assume no such authority exists.").

{14}    Regarding the other allegedly discriminatory incidents recounted by Plaintiff, we note that they were comprised of employment decisions made by her supervisors. Plaintiff's dissatisfaction with her supervisors' handling of scheduling, placement of special education students, handling of her training, and handling of disciplinary matters, are concerns regarding employment decisions within the scope of her supervisors' regular duties. Such decisions do not amount to a hostile work environment. *See Juneau v. Intel Corp.*, 2006-NMSC-002, ¶ 42, 139 N.M. 12, 127 P.3d 548 (Minzner, J., concurring) (stating that the NMHRA "prohibits only certain types of discrimination; it does not prohibit all unfair or unreasonable employment actions" and that "Title VII prohibits discriminatory employment actions, not hasty or ill-considered ones" (internal quotation marks and citation omitted)). Finally, Plaintiff's allegations that she was yelled at by Ms. Szczypiorski one time and that Ms. Patterson made one comment about the school not being able to "afford" her were also not severe, humiliating, or abusive because they were isolated incidents and they did not change Plaintiff's terms and conditions of employment. *See Ulibarri*, 2006-NMSC-009, ¶ 12 ("Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." (alteration, internal quotation marks, and citation omitted)).

{15}    Ultimately, in the absence of a connection between the incidents alleged by Plaintiff and her protected class or additional facts showing that the alleged actions of her supervisors were severe or unreasonably interfered with her work performance, Plaintiff's allegations of the events of discrimination do not support a hostile work environment claim. Thus, considering the totality of the circumstances and viewing the evidence in the light most favorable to Plaintiff, *see Littell*, 2008-NMCA-012, ¶ 38; *Archuleta*, 1999-NMCA-113, ¶ 6, we hold that, as a matter of law, the incidents as alleged by Plaintiff do not rise to the level of severity required to support a hostile work environment claim and a reasonable jury could not conclude her work environment was hostile. *Compare Ulibarri,* 2006-NMSC-009, ¶ 13 (concluding no hostile work environment existed based on sexual harassment where, over two months, the "[p]laintiff was told several times by a superior that he found her attractive and was asked on one occasion if she was interested in a relationship"), *with Nava v. City of Santa Fe*, 2004-NMSC-039, ¶ 14, 136 N.M. 647, 103 P.3d 571 (concluding a hostile work environment based on sex discrimination existed where the plaintiff's employer followed her to her house to monitor how long she took on bathroom breaks, assigned specific calls (rape calls) to the plaintiff, relieved male employees from work scenes before the plaintiff, and threw a file at the plaintiff). Accordingly, we conclude that the district court did not err in dismissing the claim. *See Littell*, 2008-NMCA-012, ¶ 38.

## III. Constructive Discharge

**{16}** Plaintiff also argues that the district court erred in dismissing her constructive discharge claim because the evidence supports a presumption that she was "subjected to conduct that could be categorized as public humiliation" based on the entirety of the incidents referenced above. As with her hostile work environment claim, Plaintiff specifies that she was "not given training she needed to do her job," "ignored or disregarded about her opinion on placement of special education students," and "not greeted or acknowledged by her supervisors," which she claims would "raise an inference to a jury that a reasonable person would have retired early."

**{17}** In order to establish constructive discharge, "[a]n employee must allege facts sufficient to find that the employer made working conditions so intolerable, when viewed objectively, that a reasonable person would be compelled to resign." *Gormley v. Coca-Cola Enters.*, 2005-NMSC-003, ¶ 10, 137 N.M. 192, 109 P.3d 280. "The bar is quite high for proving constructive discharge." *Id.* (internal quotation marks and citation omitted). "Essentially, a plaintiff must show she had no other choice but to quit." *Id.* (internal quotation marks and citation omitted). "In many cases, the circumstances surrounding resignation are not egregious enough to support a [constructive discharge] claim." *Id.* ¶ 12. New Mexico courts "have declined to establish bright-line rules for determining whether a constructive discharge exists and have instead chosen to consider a number of factors in assessing the specific circumstances for each case." *Charles v. Regents of N.M. State Univ.*, 2011-NMCA-057, ¶ 16, 150 N.M. 17, 256 P.3d 29.

**{18}** In the present case, Plaintiff alleges she was constructively discharged as a result of the discriminatory events of her supervisors described above, including her allegations that she was yelled at once by Ms. Szczypiorski, she was unjustly disciplined, her supervisors complained about her to other employees, and she "went on medical leave for emotional distress prior to the school year ending." Plaintiff's allegations of ostracism by her supervisors, unfair criticism, and difficult working conditions do not amount to constructive discharge. *See Gormley*, 2005-NMSC-003, ¶ 12 (citing with approval cases in which a "change in location of desk, monitoring of telephone calls, ostracism by fellow employees, . . . suggestion by supervisor to transfer," "dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions" did not amount to constructive discharge (internal quotation marks and citation omitted)). Thus, considering the totality of the circumstances and viewing the evidence in the light most favorable to Plaintiff, *see Littell*, 2008-NMCA-012, ¶ 38; *Archuleta*, 1999-NMCA-113, ¶ 6, we hold that, as a matter of law, although Plaintiff was clearly unhappy in her work environment, she has not established a claim of constructive discharge because she has failed to show that Defendant made her working conditions so intolerable that, when viewed objectively, a reasonable person would feel no choice but to quit. *See Gormley*, 2005-NMSC-003, ¶ 10. We therefore conclude that the district court did not err in dismissing the claim.

## CONCLUSION

**{19}** Having determined as a matter of law that Plaintiff has failed to provide sufficient evidence to support her hostile work environment and constructive discharge claims, we conclude that the district court did not err in granting Defendant's motion for summary judgment and dismissing Plaintiff's claims. We therefore affirm.

**{20} IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

**M. MONICA ZAMORA, Judge**

**JACQUELINE R. MEDINA, Judge**