890 F.2d 273
 Leo and Arlene ZUCHEL, individually and on behalf of the
deceased, Leonard Zuchel, Plaintiffs-Appellees,
v.
Officer Frederick SPINHARNEY, Defendant-Appellant,
and
The City and County of Denver, Colorado, Defendant.
 No. 88-2179.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 27, 1989.
 
 1
 Theodore S. Halaby (Robert M. Liechty, with him on the briefs), of Halaby & McCrea, Denver, Colo., for defendant-appellant.
 
 
 2
 Wade H. Eldridge, Denver, Colo., for plaintiffs-appellees.
 
 
 3
 Before SEYMOUR, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and PHILLIPS,* District Judge.
 
 
 4
 PHILLIPS, District Judge.
 
 
 5
 On August 6, 1985, Leonard Zuchel created a disturbance at a McDonald's restaurant in downtown Denver by kicking the front door and cracking its glass. The manager called the police. Before the police arrived Zuchel left the restaurant. He passed by four teenagers on bicycles and an exchange of words ensued. As the exchange became more heated, Zuchel withdrew something from his pocket. The teenagers believed it was a pocket knife. As Officer Frederick Spinharney and his partner, Officer Teri Rathburn, approached the area, at least one of the teenagers yelled to the officers that Zuchel had a knife. As Zuchel approached the officers, Spinharney shot Zuchel four times and killed him. The "knife" allegedly carried by Zuchel turned out to be a pair of fingernail clippers.
 
 
 6
 Zuchel's family then sued Spinharney and the City of Denver, Colorado for damages under 42 U.S.C. Sec. 1983. In response, the defendants filed a motion for summary judgment in which they asserted that qualified immunity protected Spinharney from suit. The district court denied the defendants' motion in a brief order and this appeal ensued.[1] For the reasons set forth below, we affirm the district court.
 
 
 7
 The analytical framework for deciding questions of qualified immunity at the summary judgment stage was set forth in our decision in Coen v. Runner, 854 F.2d 374 (10th Cir.1988):
 
 
 8
 Qualified immunity is an affirmative defense that protects government officials from personal liability unless their actions violate clearly established law of which a reasonable person would have known. Once the defense has been raised and the plaintiffs have met their burden of identifying both the clearly established law that the government official is alleged to have violated and the conduct that violated that law, the defendant must demonstrate that no material issues of fact remain as to whether his or her actions were objectively reasonable in light of the law and the information he or she possessed at the time. A defendant who makes such a showing of objective reasonableness is entitled to summary judgment unless the plaintiff can demonstrate that there are factual disputes relevant to the defendant's claim to immunity.
 
 
 9
 854 F.2d at 377. (citations omitted).
 
 
 10
 Every person has the right not to be subjected to unreasonable or excessive force while being arrested or detained by a police officer.[2] Graham v. Connor, --- U.S. ----, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). On the other hand, in making an arrest an officer has the right to use some degree of physical coercion or threat to effect the arrest. Id., 109 S.Ct. at 1871. Whether the force used in making an arrest was unreasonable is an issue to be determined in light of all the circumstances of each case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and actively resists arrest or attempts to evade arrest by flight. Id. at 1871-72.
 
 
 11
 The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than by hindsight. Id. at 1872. We recognize that police officers are often forced to make split-second judgments about the amount of force that is necessary, in circumstances that are tense, uncertain, and rapidly evolving. Id. In this case, the relevant question for qualified immunity purposes is this: Were the actions of Officer Spinharney, in using deadly force, objectively reasonable in light of the circumstances confronting him? Id.
 
 
 12
 Officer Spinharney concedes that Zuchel's right to be free from excessive force is a clearly established right. Opening Brief of Appellant at 24. Furthermore, we must consider the evidence at the summary judgment stage in the light most favorable to Zuchel. Board of Educ. v. Pico, 457 U.S. 853, 864, 102 S.Ct. 2799, 2806, 73 L.Ed.2d 435 (1982). Viewed through this evidentiary prism, we conclude that there are genuine issues of material fact precluding a judicial determination of whether Officer Spinharney's conduct was objectively reasonable.
 
 
 13
 Were we to consider only the evidence cited by counsel for Spinharney, the decision in this case would not be a difficult one. In summarizing the testimony given in the depositions of the nine known eyewitnesses, defense counsel have painted a persuasive picture justifying Spinharney's use of deadly force. This analysis, which finds some support in the record, suggests that Spinharney was being confronted by Zuchel, a disturbed and disoriented transient, in a menacing fashion. As Zuchel began walking toward Officer Spinharney he was threatening to kill one of the teenagers. Depo. of Officer Spinharney at 60; Depo. of Officer Rathburn at 59. Zuchel continued to move toward Officer Spinharney, "cussing" and "cursing" at him and said to the officer, "you'll have to kill me." Depo. of Officer Rathburn at 60; Depo. of Christopher Hartman at 18. As Zuchel began to move closer to Officer Spinharney, the officer took a step back. Depo. of Officer Spinharney at 67. Despite the fact that Zuchel was told to drop the "knife" at least three times, Depo. of Hartman at 17; Depo. of Ronnie Sanchez at 16-17; Depo. of David Joseph Blea at 24, he nevertheless continued to charge Spinharney, jabbing at him in a threatening fashion. Depo. of Rathburn at 75. According to the testimony relied upon by Spinharney, he held his fire until Zuchel was three and one half feet away, at which time the officer fired his weapon. Depo. of Hartman at 19. Zuchel allegedly continued toward Spinharney after the first, second and third shots. Depo. of Sanchez at 25-26; Depo. of Ortiz at 34; Depo. of Spinharney at 89-90. According to one eyewitness, Zuchel was two feet from Officer Spinharney when the fourth shot caused him to fall. Depo. of Ortiz at 37.
 
 
 14
 This rather one-sided factual summary provided by Spinharney, however, is only part of the picture presented by the evidentiary record which is before us. Other testimony and evidence contained in the summary judgment record casts doubt on the objective reasonableness of Spinharney's use of deadly force. At least one witness estimated Zuchel's distance from Spinharney to be 10-12 feet at the time the shots were fired. Depo. of Deborah Anne Seme at 93. This same witness testified that Zuchel was neither charging Spinharney nor stabbing at him, but instead was shot after Zuchel stopped and was trying to "explain what was going on." Depo. of Seme at 87-88. Another witness indicated that Zuchel was clearly not close enough to stab Spinharney. Depo. of Jeffrey L. Purvis at 61. Spinharney's partner, Officer Rathburn, testified that she could not see any weapon in Zuchel's hand. Depo. of Officer Rathburn at 23. One witness claims to have heard Spinharney tell Zuchel to "shut up or you're going to die." Depo. of Purvis at 9. Other witnesses heard no warning by the officers. Depo. of Eric Sauer at 17-18; Depo. of Purvis at 36. At least one witness testified that Officer Spinharney fired the four shots "[a]s fast as he could pull the trigger." Depo. of Seme at 89.
 
 
 15
 It makes no difference that Spinharney's view of the evidence is supported by the majority of the witnesses whose testimony was submitted to the district court at the summary judgment stage. Neither we, nor the district court, are entitled to weigh evidence or pass on the credibility of witnesses in deciding summary judgment issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).
 
 
 16
 Contrary to Spinharney's contention that "all that is involved in a determination of immunity is a characterization of the facts," Opening Brief of Appellant at 28, we believe this record contains sufficient evidence which, if believed by a trier of fact, could support a finding that Spinharney's conduct was not objectively reasonable.
 
 
 17
 Accordingly, the decision of the district court denying summary judgment on the basis of qualified immunity is AFFIRMED.
 
 
 
 *
 Honorable Layn R. Phillips, U.S. District Judge for the Western District of Oklahoma, sitting by designation
 
 
 [1]
 The district court's one page order did not identify any of the genuine issues of material fact that barred summary judgment based on qualified immunity. Rather than remand the matter for such a determination, Walker v. Wayne County, 850 F.2d 433, 434 (8th Cir.1988), cert. denied sub nom., --- U.S. ----, 109 S.Ct. 791, 102 L.Ed.2d 783 (1989), we have undertaken our own analysis of the record in an effort to avoid further delay. Spielman v. Hildebrand, 873 F.2d 1377, 1378 (10th Cir.1989). Our review of the district court's decision is under a de novo standard. Osgood v. State Farm Mut. Auto. Ins. Co., 848 F.2d 141, 143 (10th Cir.1988)
 
 
 [2]
 All claims that law enforcement officials have used excessive force in the course of an arrest, investigatory stop, or other "seizure" of a free citizen are properly analyzed under the fourth amendment's "objective reasonableness" standard, rather than under a substantive due process standard. Graham v. Connor, 109 S.Ct. at 1867