**McDonald TURTON, Plaintiff,**

v.

**CITY OF ATLANTA, F.L. Lisy, T.F. Newman and J.P. Bogolin, Defendants.**

**No. 1:89–CV–416–RHH.**

United States District Court, N.D. Georgia, Atlanta Division.

March 28, 1990.

**1420**

Robert A. Moss, Atlanta, Ga., for plaintiff.

Marva Jones Brooks, Deborah McIver Floyd, Office of Atlanta City Atty., Atlanta, Ga., Jeff S. Klein, Atlanta, Ga., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

This action is currently before the court on (1) defendants' objection to the affidavit of Chiqita Boswell and (2) defendants' motion for summary judgment. For the reasons stated below, the court does not consider the Boswell Affidavit in ruling on defendants' motion for summary judgment. The court PARTIALLY GRANTS and PARTIALLY DENIES defendants' motion for summary judgment.

FACTS

On December 25, 1988, plaintiff McDonald Turton and his common law wife Danel Wigfall became involved in a domestic dispute. Wigfall Deposition, p. 13. Wigfall wanted to leave the apartment, but plaintiff allegedly took her keys and prevented her exit from the building. *Id.* at 14. Wigfall dialed the police on the telephone. Just as she connected with the police department operator and said, "Hello, police," plaintiff pulled the phone out of the wall. *Id.* at 15; Turton Deposition, p. 27.

Soon after Wigfall placed the call to the police, the law officer defendants, Lisy, Newman and Bogolin, arrived at plaintiff and Wigfall's common residence. Through the locked door, Wigfall told defendants that plaintiff refused to let her leave the house. Wigfall Deposition, p. 16. Plaintiff then opened the door and let Wigfall leave. Wigfall thanked the officers and walked towards her car.

At this point, the facts become less clear. Plaintiff contends that Officer Lisy said to him, "Hey, bro, don't you know you don't

hold a woman in a building beyond [sic] her will?" When plaintiff responded, "I'm not your bro, I'm not your boy," the officers allegedly attacked him to "teach him what we do to smart asses." Turton Deposition, p. 30. Plaintiff contends that the officers beat him, split his mouth open and threw him on the pavement. Plaintiff also states that one of the officers stood on his head while plaintiff lay hand-cuffed on the ground. Plaintiff maintains that he was placed in Officer Newman's police car and driven to the Wakefield Supermarket. Plaintiff claims that Newman and Lisy beat him again at that location. *Id.* at 31, 36–38.

Defendants describe a completely different situation. Defendants claim that they attempted to arrest plaintiff only when he became belligerent and cursed the officers. Defendants' Statement of Material Facts. When Officer Lisy, under orders from Sergeant Billingsley, attempted to arrest plaintiff, plaintiff allegedly tore stitches from Lisy's hand. *Id.* The other officers then allegedly subdued and arrested plaintiff. Plaintiff was then allegedly taken directly to the pretrial detention center then to Grady hospital, where he refused treatment.

Plaintiff filed his complaint against the City of Atlanta and the above-named individual officers claiming that they deprived him of his civil rights in violation of 42 U.S.C. § 1983. In addition, plaintiff filed several state law claims against defendants. Defendants now move for summary judgment on plaintiff's section 1983 claim. Defendants have requested that the court not consider the affidavit of Chiquita Boswell in ruling on defendants' motion for summary judgment.

DISCUSSION

*I. Boswell Affidavit*

Defendants object to the affidavit of Chiquita Boswell, submitted by plaintiff in response to defendants' motion for summary judgment. Defendants assert that Boswell was not identified or located in time for defendants to depose or interview her. Plaintiff has not responded to defendants' objections. The court takes note of defendants' objection and does not consider the

Boswell affidavit in ruling on defendants' motion for summary judgment.

*II. Standard of Review for Summary Judgment*

■ This court will grant summary judgment when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must demonstrate that the nonmoving party lacks evidence to support an essential element of her or his claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant's burden is "discharged by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Once the movant has met this burden, the opposing party must present evidence establishing a material issue of fact. *Id.* The nonmoving party must go "beyond the pleadings" and present evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

■ While all evidence and factual inferences should be viewed in a light most favorable to the nonmoving party, *Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1529 (11th Cir.1987); *Everett v. Napper,* 833 F.2d 1507, 1510 (11th Cir.1987), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in the original). An issue is not genuine if unsupported by evidence or created by evidence that is "merely colorable" or "not significantly probative." *Id.* at 250, 106 S.Ct. at 2511. Similarly, an act is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case. *Id.* at 248, 106 S.Ct. at 2510. Thus, to survive a motion for summary judgment, the nonmoving party must come forward with specific evidence of every element essential to his or

her case so as to create a *genuine* issue for trial. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552; *Rollins*, 833 F.2d at 1528.

## III. *Application*

### A. Municipal Liability

■ Count 27 of the Complaint states that "[t]he police officer Defendants' actions were, at least in part, the direct result of their inadequate and improper training and direction." Defendant City of Atlanta moves for summary judgment on plaintiff's section 1983 claim. The City of Atlanta claims that plaintiff cannot survive summary judgment on its claim that the city inadequately trained and improperly directed its police officers. Beyond the bare allegation contained in Count 27 of the Complaint, plaintiff has failed to put forward any evidence demonstrating that the inadequacy of police training amounted to deliberate indifference to plaintiff's rights. *See City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Under *Celotex*, plaintiff may not simply rest on cursory and conclusory pleadings to demonstrate municipal liability. The court GRANTS defendant City of Atlanta summary judgment on plaintiff's section 1983 claim.

### B. Individual Defendants

■ The individual law officer defendants, Lisy, Newman and Bogolin, move for summary judgment on plaintiff's section 1983 claim. Plaintiff claims that the individual officers violated his Fourth Amendment right to be free from illegal searches and seizures. Specifically, plaintiff maintains that defendants employed excessive force in his arrest. Defendants claim that they are entitled to qualified immunity.

■ In *Graham v. Connor*, the Supreme Court determined that claims relating to excessive force in the course of an arrest are properly analyzed under the Fourth Amendment's "objective reasonableness" standard. —— U.S. ——, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The court must determine whether the officers' actions were "objectively reasonable" in light of the facts and circumstances confronting them and without regard to the officers' underlying intent or motivation. *Id.* Reasonableness should be judged from the perspective of the officers on the scene; "its calculus must embody an allowance for the fact that police officers are often forced to make split second decisions about the amount of force necessary in a particular situation." *Id.* The court must evaluate reasonableness from the perspective of the officer, not with the 20/20 vision of hindsight.

■ An individual officer is entitled to qualified immunity insofar as his conduct does not violate clearly established constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). When defendant police officers move for qualified immunity on an excessive force claim[1], the inquiry becomes this: Were the actions of the officer defendants in arresting plaintiff objectively reasonable in light of the circumstances confronting them; did the officer defendants violate plaintiff's clearly established constitutional right to be free from excessive force in an arrest. *See Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738; *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Zuchel v. Spinharney*, 890 F.2d 273 (10th Cir.1989).

1. It seems that the qualified immunity analysis—whether a reasonable officer could have believed the seizure at issue was not excessive (unreasonable) in light of clearly established law and the information known to the officer—collapses into the Fourth Amendment excessive force analysis—whether the force used by defendant was reasonable in light of all the surrounding circumstances, including what the officer knew. Nonetheless, the Supreme Court in

*Graham* suggested that qualified immunity analysis survived its holding. *Graham*, 109 S.Ct. 1865, 1873 n. 12. And, in *Brown v. Glossip*, 878 F.2d 871, 873 (5th Cir.1989), the Fifth Circuit determined that "qualified immunity is available as a defense to monetary liability for an objectively unreasonable use of excessive force under the Fourth Amendment." *See also Zuchel v. Spinharney*, 890 F.2d 273 (10th Cir. 1989).

Typically, the court considers evidence in the summary judgment phase in a light most favorable to the nonmoving party. *See, Rollins,* 833 F.2d at 1529; *Everett,* 833 F.2d at 1510. However, defendants request that this court ignore plaintiff Turton's testimony since it is allegedly full of discrepancies. Defendants urge the court to treat plaintiff's testimony as a "sham". Defendants point out several discrepancies between plaintiff's depositions and various sworn statements plaintiff made to the police. After reviewing these alleged inconsistencies, the court declines the invitation to treat all plaintiff's testimony as a sham. Many of the cited inconsistencies are minor variations which do not cut into the heart of plaintiff's allegations. Furthermore, some of the inconsistencies are explained by the obvious confusion that surrounded plaintiff's arrest. Thus, the court will view the evidence in a light most favorable to plaintiff.

Plaintiff's statement of the case is outlined in the fact section above. In considering defendants' motion for summary judgment, the court views plaintiff's statement of the case, supported by both plaintiff's and Wigfall's deposition, as true. "It makes no difference that defendants' view of evidence is supported by the majority of witnesses—this court is not entitled to pass on credibility of witnesses in deciding summary judgment cases." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Plaintiff's version of the facts puts forth a scenario in which defendant officers conduct cannot be said to be reasonable. Defendants allegedly attacked plaintiff to teach him "what we do to smart asses", kicking his head after he was hand-cuffed on the ground. In addition, defendants allegedly drove plaintiff to the Wakefield Supermarket lot where two officers beat him a second time. Such conduct, if true, would violate clearly established Fourth Amendment principles. Any reasonable officer should have known that such treatment of plaintiff violated plaintiff's right to be free from excessive force in an arrest. The force allegedly employed clearly extended beyond that necessary to effect an arrest of plaintiff under the circumstances of the case. Thus, the individual law officer defendants are not entitled to summary judgment on qualified immunity grounds. At trial, the jury will have to weigh the credibility of Turton's account against the credibility of the individual officers' account. The factual allegations in this case create a factual dispute, impacting on the reasonableness of the officers' conduct. "Given the factual circumstances, a jury is entitled to find whether the officers' conduct violated established constitutional rights of which a reasonable officer would have known." *Goddard v. Urrea,* 847 F.2d 765, 768 (11th Cir.1988).

CONCLUSION

The court does not consider the Boswell Affidavit in ruling on defendants' motion for summary judgment. The court PARTIALLY GRANTS and PARTIALLY DENIES defendants' motion for summary judgment. Defendant City of Atlanta is entitled to summary judgment on plaintiff's section 1983 claim. However, the individual law officer defendants are not entitled to summary judgment on qualified immunity grounds on plaintiff's section 1983 claim.

So ORDERED.