FILED
**United States Court of Appeals**
**Tenth Circuit**

**December 20, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

ESTATE OF STEVE ALIRE, by personal
representative Arlinda Alire; ARLINDA
ALIRE, individually,

    Plaintiffs - Appellants,

v.

OFFICER THOMAS WIHERA, in his
individual capacity; OFFICER THOMAS
NELSON, in his individual capacity; CITY
OF GRAND JUNCTION; DEPUTY
JASON BAILEY, in his individual
capacity; DEPUTY SHAVER HANSON,
in his individual capacity; COUNTY OF
MESA, (Mesa County Sheriff's Office);
JOHN/JANE DOES 1-10, unidentified
members of the various law enforcement
agency defendants, in their individual and
personal capacities,

    Defendants - Appellees.

No. 23-1213
(D.C. No. 1:21-CV-00774-GPG)
(D. Colo.)

_____

## ORDER AND JUDGMENT[*]

_____

Before **HOLMES**, Chief Judge, **BALDOCK**, and **MATHESON**, Circuit Judges.

_____

Defendants, Officers Thomas Wihera and Thomas Nelson of the City of Grand

Junction Police Department and Deputies Jason Bailey and Shaver Hanson from the

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Mesa County Sheriff's Office, shot Steve Alire sixteen times, killing him. Mr. Alire had threatened a group of men playing basketball with what appeared to Defendants to be an assault rifle. Unbeknownst to Defendants, the rifle was only an "Airsoft" or toy gun. After an extended interaction with law enforcement, during which Mr. Alire entered and exited his home three times, recorded events on his phone, and twice pushed his rifle closer to Defendants, Mr. Alire grabbed his rifle. Defendants believed Mr. Alire was armed and dangerous. Not taking any chances, Defendants fired.

Plaintiffs, Mr. Alire's estate and his surviving spouse, commenced this civil action pursuant to 42 U.S.C. § 1983, raising four claims for relief: (1) violation of the Fourth Amendment against all Defendants for use of excessive force; (2) violation of the Eighth Amendment against all Defendants for cruel and unusual punishment; (3) failure to train/supervise or implement policies against the City of Grand Junction and Mesa County; and (4) violation of the Fourteenth Amendment against all Defendants for deprivation of Ms. Alire's substantive due process rights. Plaintiffs also raised two claims arising under Colorado state law.

The district court dismissed Plaintiffs' Complaint for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). The court held qualified immunity barred Plaintiffs' Fourth Amendment excessive force claim against Defendants. The court disposed of Plaintiffs' remaining federal claims for pleading failures.

Plaintiffs appeal.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.[1] We conclude qualified immunity bars Plaintiffs' Fourth Amendment excessive force claim, because the law was not clearly established at the time of the incident showing Defendants violated Mr. Alire's Fourth Amendment rights when they shot him. Furthermore, we affirm the district court's dismissal of Plaintiffs' remaining federal claims for failure to state any cause of action.

I.

Because this matter comes before us on a Rule 12(b)(6) motion to dismiss, we take the following account from Plaintiffs' Complaint, assuming "the truth of all well-pleaded facts" and drawing "all reasonable inferences there from in the light most favorable to the [P]laintiffs." *Dahn v. Amedei*, 867 F.3d 1178, 1185 (10th Cir. 2017). On March 17, 2020, two witnesses called the Grand Junction Police Department and reported a person identified as Steve Alire was threatening a group of men playing basketball at Orchard Mesa Middle School's outdoor court.  They reported Mr. Alire flashed a knife at the players from behind a fence.  Then Mr. Alire retreated into his nearby home only to reappear with an Airsoft gun that looked like a black assault rifle. The gun was a replica of a French FAMAS F1 rifle.  Mr. Alire walked to the end of his

---

[1] The district court dismissed Plaintiffs state law claims without prejudice. Plaintiffs challenge the district court's dismissal by raising a second issue under a new legal theory not argued before the district court, asking whether Colorado law overcomes qualified immunity granted for federal claims.  Plaintiffs waived this argument by failing to raise it before the district court and failing to argue plain error on appeal. *See In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th 1126, 1181 (10th Cir. 2023).

driveway and threatened the men with the rifle, laying down on the ground and aiming it at them. In fear for their lives, the men fled.

At least seven law enforcement officers responded to the scene, members of the Mesa County Sheriff's Office and the Grand Junction Police Department. Mr. Alire was inside his house when they arrived. The officers created a secured perimeter around Mr. Alire's residence and called to him using a "public address system." Mr. Alire emerged with the replica rifle in his hands. He threw it toward Defendants and shouted, "it's just a pellet gun." The gun's muzzle broke off as the rifle hit the ground.[2] But Mr. Alire did not surrender himself to the police at this point. Instead, he again retreated to his home.

Mr. Alire engaged in a similar pattern of behavior twice more, making suicidal statements all the while. Each time, Mr. Alire emerged from his home with a cellphone in hand, tampering with it, and recording the events. He also approached the rifle again, pushing it closer to Defendants. At no point did he surrender himself to law enforcement. Defendants did not approach Mr. Alire or attempt to retrieve the gun.

The third time Mr. Alire emerged from his home, he again approached the rifle. Mr. Alire grabbed the rifle.[3] Believing Mr. Alire might fire first, Defendants fired

---

[2] Plaintiffs make no representation that Defendants heard or reacted to Mr. Alire's statement. Nor do Plaintiffs allege Defendants saw the rifle's muzzle break off.

[3] On appeal, Plaintiffs argue a genuine issue of material fact exists as to whether Mr. Alire pointed the replica at Defendants, touched it, or did not touch it at all, confusing the standard by which we review a Complaint on a 12(b)(6) motion to dismiss, which is "in the light most favorable to the nonmoving party." *Johnson v.*

sixteen rounds of bullets, killing Mr. Alire. Postmortem testing revealed Mr. Alire had ethanol and methamphetamine in his system.

Defendants moved to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The district court granted Defendants' motions and dismissed the case. As to Plaintiffs' first claim, violation of the Fourth Amendment by use of excessive force, the court determined qualified immunity applied, barring suit, because no clearly established law put Defendants on notice their conduct violated Mr. Alire's constitutional rights. The court then dismissed Plaintiffs' Eighth Amendment claim because the Eighth Amendment does not apply to events occurring before a criminal conviction. The court dismissed Plaintiffs' Fourteenth Amendment and municipal liability claims because the Complaint failed to allege facts sufficient to establish a cause of action. Finally, having dismissed all federal law claims, the court declined to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.

II.

We review the district court's 12(b)(6) dismissal of Plaintiffs' Complaint de novo. *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe, New Mexico*, 993 F.3d 802, 810 (10th Cir. 2021). The well-pleaded complaint rule permeates this appeal. We assume "the truth of all well-pleaded facts" and draw "all reasonable inferences there

---

*Smith*, 104 F.4th 153, 167 (10th Cir. 2024). Carefully reviewing the Complaint, however, Plaintiffs only allege Mr. Alire either touched the gun or pointed it.

5

from in the light most favorable to the plaintiffs." *Dahn*, 867 F.3d at 1185. Even so, a complaint must contain more than mere "labels and conclusions" to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id*. Indeed, we "disregard conclusory allegations," looking instead to "the remaining factual allegations to see whether Plaintiffs have stated a plausible claim." *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1145 (10th Cir. 2023). It is a complaint's *factual* allegations that "must raise a right to relief beyond mere speculation." *Dahn*, 867 F.3d at 1185. In short, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Bearing in mind these principles, we address each federal claim Plaintiffs raised in turn.

A.

We first consider whether qualified immunity bars Plaintiffs' Fourth Amendment claim. "We apply a special standard of review when defendants assert a qualified immunity defense." *Dahn*, 867 F.3d at 1185. To survive a motion to dismiss based on qualified immunity, Plaintiffs must make two showings. *Id.* First, Plaintiffs must show "the defendant violated a constitutional or statutory right." *Id.* Second, Plaintiffs must show the right "was clearly established at the time of the conduct in question." *Id.* If Plaintiffs fail to make either showing, qualified immunity applies. *See id.* We decide which prong to address first, and we need not address both. *Id.*

6

Exercising our discretion to address the second prong first, we turn to whether Mr. Alire's rights were clearly established on March 17, 2020, the date of his fateful encounter with Defendants. Because Defendants raised the defense of qualified immunity, "Plaintiffs have the burden of demonstrating the constitutional violation was clearly established on the date of the incident." *Lewis v. City of Edmond*, 48 F.4th 1193, 1197 (10th Cir. 2022). In general, a right is clearly established when a Supreme Court or Tenth Circuit opinion on point exists or when the "clearly established weight of authority from other circuits" points in one direction. *Pompeo v. Bd. of Regents of the Univ. of New Mexico*, 852 F.3d 973, 981–82 (10th Cir. 2017). But we must proceed cautiously and not "define clearly established law at too high a level of generality." *City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9, 12 (2021). Rather, "[c]onsistent with the Supreme Court's instructions, our inquiry 'must be undertaken in light of the specific context of the case.'" *Lewis*, 48 F.4th at 1198 (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021)). We do not require "exactly parallel" conduct "for the officials to be on notice of clearly established law." *Est. of Smart by Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020) (quoting *Halley v. Huckaby*, 902 F.3d 1136, 1149 (10th Cir. 2018)). The "salient question is whether the state of the law at the time of the incident provided fair warning to the defendants that their alleged conduct was unconstitutional." *Id.* (internal quotations and ellipses omitted).

Specificity is particularly important in Fourth Amendment excessive force cases. *See Lewis*, 48 F.4th at 1198. Excessive force claims often proceed from circumstances where "tense, uncertain, and rapidly evolving" situations require a

7

"split-second judgment" from an officer. *Id.* at 1198. Accordingly, "we must avoid the '20/20 vision of hindsight,'" and rather recognize officers may have difficulty determining "how relevant legal doctrine will apply to the factual situation the officer confronts." *Id.* (internal quotations and ellipses omitted). Thus, plaintiffs overcome qualified immunity in this context only when "existing prior precedent 'squarely governs' the specific facts at issue." *Id.* at 1198–99 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004)). In other words, "[t]he rule's contours must be so well defined that it is clear to a reasonable officer [Defendants'] conduct was unlawful in the situation [Defendants] confronted." *Id.* at 590 (quoting *D.C. v. Wesby*, 583 U.S. 48, 63 (2018)).

Here, Plaintiffs point to two cases in an attempt to show Defendants violated Mr. Alire's clearly established rights: *Allen v. Muskogee, Okl.,* 119 F.3d 837 (10th Cir. 1997) and *Esate. of Ceballos v. Husk*, 919 F.3d 1204, 1212 (10th Cir. 2019). To be sure, *Allen* and *Ceballos* share some similarities with the present case—they both involved suspects with unstable mental conditions. Mr. Allen was suicidal. *Allen*, 119 F.3d. at 841. Mr. Ceballos was drunk and potentially under the influence of drugs. *Ceballos*, 919 F.3d at 1219. Mr. Alire was suicidal and under the influence of drugs. But the officers' conduct in *Allen* and *Ceballos* was materially different from Defendants' conduct here, such that we cannot say *Allen* and *Ceballos* "squarely govern." *Lewis*, 48 F.4th at 1198–99.

The central distinction is that, in both *Allen* and *Ceballos*, an officer's alleged reckless conduct precipitated the need to use deadly force, unlike the present case.

8

*Allen*, 119 F.3d at 841; *Ceballos*, 919 F.3d at 1219.  The Supreme Court aptly described *Allen* thus: "the officers in *Allen* responded to a potential suicide call by sprinting toward a parked car, screaming at the suspect, and attempting to physically wrest a gun from his hands." *City of Tahlequah*, 142 S. Ct. at 12; *Allen*, 119 F.3d. at 841.  In the chaos created by the officer's actions, the suspect, Mr. Allen, pointed his gun at an officer, who shot and killed him.  *Allen*, 119 F.3d. at 841.  Within ninety seconds of the officer's arrival, Mr. Allen died at the officer's hands.  *Id.* at 839.  We denied qualified immunity, holding "a reasonable jury could conclude on the basis of some of the testimony presented that the officers' actions were reckless and precipitated the need to use deadly force." *Id.* at 841.

"The circumstances at issue in *Allen* are closely analogous to those at issue [in *Ceballos*]." *Ceballos*, 919 F.3d at 1216.  In *Ceballos*, an officer responded to a report that Mr. Ceballos was "acting crazy" with a baseball bat in his driveway, "drunk," and "probably on drugs." *Id*. at 1209.  The officer "approached Ceballos quickly, screaming at Ceballos to drop the bat and refusing to give ground as Ceballos approached the officers." *Id*. 919 F.3d at 1215.  The responding officer's actions escalated the confrontation and created the need to shoot Mr. Ceballos within a minute of the officer's arrival.  *Id.*  Thus, both *Ceballos* and *Allen* clearly established officers can violate the Fourth Amendment when their "own conduct in carelessly approaching a suspect unreasonably created the need to use such force." *Lewis*, 48 F. 4th at 1201; *Ceballos*, 919 F.3d at 1218; *Allen*, 119 F.3d. at 841.

9

We note that is not all *Allen* and *Ceballos* established. We have also recognized *Allen* clearly established "that an officer acts unconstitutionally when he relies on lethal force as a first resort in confronting an irrational suspect armed with a weapon of short-range lethality who is on his own property." *See Ceballos*, 919 F.3d at 1219. But *Ceballos* and *Allen* did not clearly establish that officers must use non-lethal force before resorting to lethal force when confronted with a mentally unstable suspect in all circumstances. Such a rule is far too general and ignores the context of *Ceballos* and *Allen*, where officers jumped to lethal force within minutes of arriving on the scene, after escalating the situation through their own reckless conduct.

Moreover, while Mr. Alire, like the suspects in *Allen* and *Ceballos*, suffered from mental impairments during his interactions with law enforcement, we cannot look past reckless escalation when *Allen* and *Ceballos* hinged on it. Of course, "[t]he mentally ill or disturbed condition of the suspect is a relevant factor in determining [the] reasonableness of an officer's responses to a situation." *Ceballos*, 919 F.3d 1204, 1214 (10th Cir. 2019). But our jurisprudence does not subject officers to litigation based on general principles, abstracted from the context of a case, with ambiguous applications. Even assuming Mr. Alire's altered mental state was obvious to the officers, it is not clear from *Ceballos*, or any other case, that Defendants' failure to call in behavioral specialists or to use non-lethal force when facing a man grabbing for what Defendants believed to be an assault rifle violated Mr. Alire's constitutional rights. Again, to squarely govern, circumstances must be sufficiently similar to provide notice of a constitutional violation. *See Rivas-Villegas*, 595 U.S. at 6.

10

*Allen* and *Ceballos* are not sufficiently akin to the situation Defendants confronted to, in the heat of the moment, fairly warn Defendants of a potential constitutional violation. Defendants did not jump to lethal force within minutes of arriving on the scene, nor did they recklessly cause the need to use deadly force. Rather, the reckless conduct exhibited in *Allen* and *Ceballos* starkly differs from Defendants' behavior here. When presented with a mentally unstable and apparently armed individual, Defendants did not escalate the situation. Defendants allowed Mr. Alire to go in and out of his house three times, not knowing what he was doing inside or if he would exit with another weapon. Even as Mr. Alire reached for what appeared to be an assault rifle a first and second time, Defendants took no action against him. Only after Mr. Alire's third approach, when Defendants reportedly believed Mr. Alire would shoot, did Defendants fire.

Searching for any indicia of reckless escalation, Plaintiffs argue Defendants recklessly caused the need to use deadly force by calling Mr. Alire from his home using a public address system. But Defendants' conduct was the opposite—it was an attempt to deescalate the situation. Defendants had just received word that Mr. Alire threatened a group of men with an assault rifle. Establishing a perimeter and attempting to compel surrender from a distance was a prudent, nonlethal response to a reported gun threat rather than obviously reckless one. Defendants' use of a public address system highlights the distinction between this case and *Ceballos* and *Allen.*.

Plaintiffs allege the officers should have realized the gun was fake. Mr. Alire yelled it was a pellet gun, and the gun's muzzle broke off when he threw it. Plaintiffs

do not allege Defendants heard Mr. Alire say it was a pellet gun, nor that Defendants saw the muzzle break off.[4]  But even assuming Defendants did, we have uncovered no case advising Defendants to take Mr. Alire's word at the risk of their lives.[5]

We have never held officers must wait and see whether a gun shoots real or fake bullets before taking protective action.  Rather, our refrain has been a "reasonable officer need not await the glint of steel before taking self-protective action." *Est. of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008) (internal quotations omitted).  With 20/20 hindsight and from the safety of a bench, it is easy to scrutinize Defendants.  We now know Mr. Alire was mentally unstable, and his airsoft

---

[4] The Complaint provides statements made by each Defendant to investigators, only challenging the reasonableness of Defendants' perceptions, not Defendants' sincerity.  Deputy Hanson explained, "[i]f [Mr. Alire] grabbed [the gun] again as far as I'm concerned, he . . . was going to shoot us."  Officer Wihera believed Mr. Alire was about to point the gun at him.  Officer Nelson reported Mr. Alire eventually forced Defendants to the ground, and "it was obvious Mr. Alire was not going to throw the gun again."  Officer Nelson also stated Mr. Alire pointed the "gun" at him.  Deputy Bailey stated, on Mr. Alire's final approach, Mr. Alire "bent at the knees, went to the gun faster, and grabbed the gun with both hands."

[5] We note *Zuchel v. Spinharney*, 890 F.2d 273 (10th Cir. 1989) does not squarely govern.  *Zuchel* established "officers *can* violate clearly established law by acting on a grossly mistaken belief that a suspect poses a deadly threat," but it is too factually distinct to provide Defendants notice a constitutional violation occurred here.  *Est. of Smart by Smart v. City of Wichita*, 951 F.3d 1161, 1173 (10th Cir. 2020).  In *Zuchel*, we denied qualified immunity where a jury could conclude officers shot a suspect, potentially armed with a knife and standing ten to twelve feet away from the officers.  890 F.2d at 274.  The suspect was not charging or stabbing but rather had "stopped and was trying to explain what was going on." *Id.*  Conversely, here, Mr. Alire approached and grabbed what looked to be an assault rifle.  "Suffice it to say, a reasonable officer could miss the connection between that case and this one." *City of Tahlequah, Oklahoma,* 595 U.S. at 12 (2021).

!

rifle likely threatened no more than a few welts and bruises. But unless the law clearly stood to warn Defendants they committed a constitutional violation, qualified immunity applies. No case warned Defendants that they needed to wait and see what came out of Mr. Alire's gun. Because Plaintiff's failed to show Defendants violated clearly established law, qualified immunity bars Plaintiff's Fourth Amendment claim.

B.

Next, Plaintiffs argue the district court improperly dismissed Plaintiff's Eighth Amendment cruel and unusual punishment claim, alleging Defendants Wihera, Nelson, Bailey, and Hanson failed to provide for Mr. Alire's medical and behavioral health needs after they surrounded his residence. The district court dismissed Plaintiff's claim because the Eighth Amendment applies after a prisoner is "already convicted of a crime," not before. *Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010). Conversely, a Fourth Amendment excessive force claim "pertains to the events leading up to and including an arrest of a citizen previously at liberty." *Id.* Therefore, the district court correctly dismissed Plaintiffs' Eighth Amendment claim because the events before us occurred prior to any conviction. On appeal, Plaintiffs concede they "erroneously brought their failure to provide care claim under the improper amendment." But they argue *if* they had brought a claim using a "Fourth Amendment" label instead of an "Eighth Amendment" one, their Complaint would survive a motion to dismiss.

Plaintiffs waived this argument, so we will not consider it on appeal. The appellate system is not a "second-shot forum." *Richison v. Ernest Grp., Inc.*, 634 F.3d

1123, 1130 (10th Cir. 2011) (quoting *Tele–Communications, Inc. v. C.I.R.,* 104 F.3d 1229, 1233 (10th Cir.1997)).  When plaintiffs present a new legal theory for the first time on appeal, "we usually hold it forfeited." *Id.* at 1128.  In contrast, waived theories are those "intentionally relinquished or abandoned in the district court." *Id.* at 1127.  "Unlike waived theories, we will entertain forfeited theories on appeal, but we will reverse a district court's judgment on the basis of a forfeited theory only if failing to do so would entrench a plainly erroneous result." *Id.* at 1128.  But failing to argue plain error on appeal "'effectively waives' the issue." *In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th 1126, 1181 (10th Cir. 2023) (cleaned up) (quoting *Fish v. Kobach*, 840 F. 3d 710, 729–30 (10th Cir. 2016).  "That is, the litigant must face the more severe consequences of an outright waiver—they lose their right to any review at all." *Id.* Plaintiffs raise this argument for the first time on appeal.  By failing to argue plain error, they waived it. *Id.*  Accordingly, we will not consider it.

C.

Plaintiffs also appeal the district court's dismissal of their municipal liability claim against Mesa County and City of Grand Junction.  As a preliminary matter, we observe Mesa County is not a properly named defendant.  At oral argument, Plaintiffs conceded they sued the wrong defendant.  Under Colorado Revised Statute § 30-11-105, "the name in which the county shall sue or be sued shall be, 'The board of county commissioners of the county of ...........'".  We have noted, "[t]his statutory provision provides the exclusive method by which jurisdiction over a county can be obtained.  An action attempted to be brought under any other designation is a nullity,

14

and no valid judgment can enter in such a case." *Gonzales v. Martinez*, 403 F.3d 1179, 1182, n.7 (10th Cir. 2005). Even if we look past this pleading failure, however, Plaintiffs' Complaint fails to state a plausible municipal liability claim.

"To prove municipal liability under § 1983, the plaintiff must show: (1) a municipality enacted or maintained a policy, (2) the municipality was deliberately indifferent to the resulting constitutional violations, and (3) the policy caused the underlying constitutional violation." *Arnold v. City of Olathe, Kansas*, 35 F.4th 778, 795 (10th Cir. 2022).[6] As an initial observation, Plaintiffs do not identify any specific policy or custom either Mesa County or City of Grand Junction maintained. Nevertheless, a plaintiff may establish an "official policy or custom for § 1983 municipal-liability purposes," even in the absence of a formally promulgated policy or custom, by proving "deliberately indifferent training or supervision." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013). But deliberate indifference cannot exist without notice. *Id.* at 771. A municipality must have notice "that its action or failure to act is substantially certain to result in a constitutional

---

[6] Plaintiffs argue the district court improperly analyzed their claim under *Arnold*. Plaintiffs state: "There was no way for [Plaintiffs] to adhere to the principles outlined in a case that was decided after they filed their complaint, nor was any opportunity to amend or address the shift in law provided." But *Arnold* did not present a "change in law." In *Schneider*, we identified three elements of a municipal liability claim, "(1) official policy or custom, (2) causation, and (3) state of mind." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). These are the same elements identified by the district court. Thus, Plaintiffs had a responsibility to plead according to the requirements expressed in *Arnold* long before we issued that opinion.

violation," before it can "consciously or deliberately choose[] to disregard the risk." *Id.* (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)).  A plaintiff may establish notice by "proving the existence of a pattern of tortious conduct."  *Id.* Or a plaintiff could show "a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction."  *Id.*

Plaintiffs' Complaint fails at the first step.  It does not allege facts showing "deliberately indifferent training or supervision," which requires a factual allegation of notice.  Plaintiffs have not alleged facts showing Defendants had notice a constitutional violation was substantially certain to result absent municipal action. Disregarding conclusory assertions and taking Plaintiffs' well-pleaded factual allegations as true, Plaintiffs only assert a handful of statistics that do not establish "a pattern of tortious conduct," conferring notice. *Schneider*, 717 F.3d at 771.  Plaintiffs make no statistical allegations specific to the City of Grand Junction, which we note is not coterminous with Mesa County.  As for Mesa County, Plaintiffs allege Mesa County's rate for police involved shootings is ten times the national average and five times the average in Colorado generally.  Plaintiffs also allege nine police shootings occurred in the two years before Mr. Alire's death.  But police shootings are not per se constitutional violations, and Plaintiffs' statistics do not address excessive force.  Even if statistics could establish notice, the statistics here are insufficient to establish a claim of municipal liability.

16

D.

Finally, Plaintiffs appeal the district court's dismissal of a Fourteenth Amendment substantive due process claim brought by Mr. Alire's surviving spouse, Arlinda Alire. Specifically, Plaintiffs alleged Defendants interfered with Ms. Alire's familial relationship with Mr. Alire in a manner that shocks the conscience. The district court dismissed Plaintiffs' claim for failing to allege Defendants *intended* to interfere with Ms. Alire's familial relationship, or even that Defendants knew of Ms. Alire's existence at the time of Mr. Alire's death.

When a plaintiff seeks relief for tortious executive action in violation of substantive due process rights under the Fourteenth Amendment, we ask whether the government action "deprived a person of life, liberty, or property in a manner so arbitrary it shocks the judicial conscience." *Doe v. Woodard*, 912 F.3d 1278, 1300 (10th Cir. 2019). To satisfy the shocks the conscience standard, a plaintiff must show "deliberate government action that is arbitrary and unrestrained by the established principles of private right and distributive justice." *Id.* "The behavior complained of must be egregious and outrageous." *Id.* at 1261. In the context of a familial association claim, plaintiffs must satisfy the "shocks judicial conscience standard" by demonstrating: "(1) intent to interfere with the family relationship and (2) an unwarranted and severe intrusion." *Halley v. Huckaby*, 902 F.3d 1136, 1154 (10th Cir. 2018).

Here, Plaintiffs' Complaint flatly fails to allege Defendants intended to interfere with Ms. Alire's relationship with decedent when they shot him. Indeed, the Complaint

17

does not even allege Defendants knew Ms. Alire existed. Plaintiffs point to allegations in the Complaint asserting Defendants "responded to Alire's Residence" and that Defendants "knew Mr. Alire well." But it does not follow that Defendants knew of Ms. Alire, much less that Defendants acted with intent to interfere with her familial relationships. On appeal, Plaintiffs add, "[i]t is well known that law enforcement use[] Computer Aided Dispatch Systems . . . filled with information including family ties." But Plaintiffs failed to make this allegation in their Complaint. Even if they had, to state a claim, Plaintiffs needed to allege facts showing Defendants knew of Ms. Alire and acted with intent to interfere with her relationship, not merely that Defendants had access to a database revealing Mr. Alire's marital status. They failed to do so. Accordingly, we affirm.

***

Affirm the judgment of the district court.

Entered for the Court<br><br><br>Bobby R. Baldock<br>Circuit Judge

18